IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| LORI WILSON, individually, and on behalf of all others similarly situated,<br><br>　　　　　　　　Plaintiffs,<br><br>　v.<br><br>PECKHAM, INC.,<br><br>　　　　　　　　Defendant. | CIVIL ACTION<br><br>No.:<br>Hon. |

**COLLECTIVE ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff, Lori Wilson ("Plaintiff" or "Wilson"), individually and on behalf of all others similarly situated, by and through her attorneys, hereby brings this Collective Action Complaint against Defendant, Peckham, Inc. ("Peckham"), and alleges as follows:

**PRELIMINARY STATEMENT**

1. This action arises out of Defendant's systemic failure to compensate its employees for all hours worked, including overtime hours worked at the appropriate overtime rate, in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*.

2. Plaintiff and the putative collective members consist of current and former call center agents, or similar positions ("Agents" or "Plaintiffs"), who were compensated on an hourly basis. Throughout the relevant period, Defendant maintained a corporate policy and practice of failing to compensate its Agents for all mandatory pre- and mid-shift off-the-clock work. In particular, Defendant required its Agents to arrive at work prior to their scheduled shifts in order to perform a number of off-the-clock tasks that were integral and indispensable to their jobs, including booting up computers, logging into numerous software programs, and

1

logging into phones.  The Agents only received compensation *after* this work was completed, though they were required to perform this work in order to be prepared to answer phone calls when their scheduled shifts began.

3. The Agents' pre-shift work was required to be completed before "clock in." Failure to be prepared to answer phone calls when their scheduled shifts began could result in poor schedule adherence scores, poor performance evaluations, warnings, discipline, and possibly termination.

4. Defendant, through its managers, was aware that its Agents were completing this off-the-clock work without compensation. Defendant suffered or permitted, and in fact trained and required, its Agents to complete this pre-shift work.

5. The Agents routinely worked 40 hours or more per week, before accounting for their off-the-clock work. When the off-the-clock work is included, even those Agents who were scheduled and paid for only 40 hours per week, actually worked over 40 hours per week without the required overtime rate for hours worked over 40 per week.

6. Defendant's practice of failing to compensate its Agents for all work and failing to compensate Plaintiffs at the appropriate overtime rate for overtime hours worked, violated the Agents' rights under the FLSA.

7. Plaintiff brings this action for violation of the FLSA as a collective action, pursuant to Section 216(b) of the FLSA, on behalf of the following Collective:

> *All current and former hourly call center agents who worked in a Peckham call center at any time during the last three years.*

8. Defendant is liable for its failure to pay it Agents for all work performed, and at the appropriate overtime rate for hours worked in excess of 40 per week.

9. Agents who elect to participate in this FLSA collective action seek compensation for all off-the-clock, pre-shift work performed for Defendant, compensation at the appropriate overtime rate for all hours worked in excess of 40 per week, an equal amount for liquidated damages, prejudgment interest, and attorneys' fees and costs, pursuant to 29 U.S.C. § 216(b).

## JURISDICTION AND VENUE

10. This Court has subject-matter jurisdiction over Plaintiffs' FLSA claims pursuant to 28 U.S.C. § 1331 because Plaintiffs' claims raise a federal question under 29 U.S.C. § 201, *et seq.*

11. Additionally, this Court has jurisdiction over Plaintiff's collective action FLSA claim pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer . . . in any Federal or State court of competent jurisdiction."

12. Defendant's annual sales exceed $500,000 and it has more than two employees, so the FLSA applies in this case on an enterprise basis. Defendant's Agents engaged in interstate commerce and therefore they are also covered by the FLSA on an individual basis.

13. This court has personal jurisdiction over Defendant because it is a Michigan corporation and maintains its principal place of business in Michigan.

14. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and (c) because Defendant conducts business in this District, and a substantial portion of the events that give rise to the Plaintiffs' claims occurred in this District.

15. All of the alleged causes of action can be determined in this judicial proceeding and will provide judicial economy, fairness, and convenience for the parties.

## PARTIES

16. The named Plaintiff, Lori Wilson, is an adult resident of Battle Creek, Michigan. She started working for Defendant as an hourly call center agent in or about June 1999. Wilson's consent to join form is attached as *Exhibit A*.

17. Additional Opt-In Plaintiffs were or are employed by Defendant as hourly call center agents during the past three years and their consent forms will also be filed in this case.

18. Defendant, Peckham, Inc., describes itself as "a national award-winning non-profit organization, recognized for its achievement in providing exceptional vocational rehabilitation for people with disabilities and barriers to employment. We accomplish our mission by working with community partners and through our own diverse business lines consisting of apparel manufacturing, warehousing, call centers, environmental services, and farming."

19. Peckham is a Michigan corporation with its offices and principal place of business located in Lansing, Michigan.

20. Peckham maintains a registered office in Michigan and its registered agent can be served as follows: Mitchell Tomlinson, 3510 Capital City Boulevard, Lansing, Michigan 48906.

## FACTUAL ALLEGATIONS

21. According to its website, Peckham is "one of the largest vocational community rehabilitation programs in the state of Michigan. [Peckham's] clients are a diverse group from many partnering agencies."

22. Peckham maintains a "Contact Center Solutions" line (*i.e.*, call centers), which "provides best in class pre sales, post sales, and IT support services that meet or exceed the most demanding brand standards, all delivered from a hyper scalable and flexible platform."

23. Peckham employs hundreds of call center agents[1] as part of its Contact Center Solutions business line to handle consumer and customer phone calls concerning various issues. According to its website, "[Peckham's] Contact Center Solutions division handles over 9 million interactions a year, ranging from simple end-user questions to front line ticket ownership of highly technical issues."

24. Peckham requires its Agents to work scheduled shifts, typically eight hour shifts, five days per week, with a 30 minute unpaid meal break each shift.

25. Peckham compensates its Agents on an hourly basis and classifies them as non-exempt employees under the FLSA.

26. Throughout her employment with Peckham, Wilson was a full-time Agent who regularly worked 40 hours per week and earned approximately $20 per hour.

27. Wilson worked at Peckham's call center and was assigned to work with the Federal Defense Logistics Agency's Customer Interaction Center, which operates 24 hours per day, every day throughout the year.

28. In this role, Wilson's job duties included fielding inbound calls and performing a wide range of support services to those with questions related to the Defense Logistics Agency.

**Pre-Shift Work**

29. Like most call centers, Peckham maintains detailed attendance and schedule adherence policies and uses them to evaluate its Agents' job performance.

30. Peckham uses its attendance/schedule adherence policies to pressure its Agents into arriving early and working off-the-clock.

---

[1] Defendant uses several job titles for its call center agents, including but not limited to call center representatives, customer contact representatives, customer service representatives and technical service representatives.

31. Throughout their employment with Peckham, Wilson and other Agents were pressured to work substantial amounts of uncompensated, off-the-clock time as part of their job duties.

32. Peckham's Agents were trained and required to follow a specific protocol to start up and log into the company's computer network and numerous software programs in order to access the necessary information to perform their work.

33. The pre-shift boot-up and login process generally consisted of the following steps:

   a. First, the Agents logged into their phone;

   b. Second, the Agents turned on their computer;

   c. After waiting or the computer to boot up, the Agents were prompted to login to Windows using the ctrl+alt+delete function and enter their username and password;

   d. After the Agents were logged into Windows and connected to Peckham's network, they began the required login process;

   e. The first step in the login process was for the Agent to open Peckham's intranet timekeeping program and enter their assigned username and password;

   f. After the Agent navigated to the proper page, they clicked a box to "clock in"; and

   g. The Agents began getting paid at the start of their shift, after they "clocked in" and began receiving phone calls.

34. The boot-up and login process described above took substantial time on a daily basis, ranging from 5 to 60 minutes per shift, or more, depending on how fast/slow the computers and phones were operating.

35. Peckham's Agents were not actually "clocked in" for their shifts until *after* the boot-up and login process was complete; meaning that Wilson and all other Agents worked at least 5 to 60 minutes each per shift for which they were never compensated.

36. If Agents arrived immediately prior to their scheduled shifts, they could not reasonably perform all required pre-shift work necessary to be "clocked in" when their scheduled shifts began, and they would therefore receive "late punches" on their records and poor schedule adherence scores.

37. Peckham had express and constructive knowledge that its Agents began the boot-up and login process off-the-clock in order to make sure they were clocked in on time.

### Mid-Shift Work During Unpaid Meal Periods

38. Peckham provided its Agents with a 30-minute unpaid meal break each shift.

39. Peckham, however, required its Agents to perform off-the-clock work during their unpaid meal breaks, including logging-out of various computer programs and applications at the beginning of each meal break.

40. Additionally, Wilson and other Agents would return from the meal break 10 to 15 minutes early in order to have enough time to "clock in" after the meal period. This process was similar to the pre-shift login process describe above, and this time also went unpaid.

41. The mid-shift off-the-clock time worked by Peckham's Agents directly benefitted Peckham and the process was an integral and indispensable part of the Agents' job responsibilities.

42. The U.S. Department of Labor recognizes that call center jobs, like those held by Peckham's Agents, are homogenous and it issued Fact Sheet #64 in July 2008 to alert call center employees to some of the abuses which are prevalent in the industry. One of those abuses, which is occurring in this case, is an employer's refusal to pay for work "from the beginning of the first principal activity of the workday to the end of the last principal activity of the workday." Fact Sheet #64 at p. 2 (a copy of which is attached as *Exhibit B*).

43. The Department of Labor's Fact Sheet #64 specifically condemns an employer's non-payment of an employee's necessary pre-shift activities: "An example of the first principal activity of the day for agents/specialists/representatives working in call centers includes starting the computer to download work instructions, computer applications and work-related emails." See *Id.*, at p. 2. Additionally, the FLSA requires that "[a] daily or weekly record of all hours worked, including time spent in pre-shift and post-shift job-related activities must be kept." *Id.*

44. At all relevant times, Peckham was an "employer" and Peckham directed and directly benefitted from the boot-up and login activities performed by its Agents.

45. At all relevant times, Peckham controlled its Agents' work schedules, duties, protocols, applications, assignments and employment conditions.

46. At all relevant times, Peckham was able to track the amount of time its Agents spent booting up and logging into Peckham's computer network and software programs; however, Peckham failed to document, track, or pay its Agents for the off-the-clock work they performed.

47. At all relevant times, Peckham's policies and practices deprived its Agents of overtime wages owed for the pre- and mid-shift activities they performed off-the-clock.

48. Because Peckham's Agents typically worked scheduled shifts of at least 40 hours per week, their required pre-shift work was nearly always overtime work, compensable at one and one-half time their regular rate of pay.

49. Wilson typically worked approximately 5-60 minutes of required pre-shift work per day, amounting to approximately 30 minutes to several hours of uncompensated time per week. In addition, Wilson typically worked approximately 10-15 minutes per shift during her

8

unpaid meal period, amounting to approximately 50-100 additional uncompensated minutes per week.

50. In the aggregate, the amount of Wilson's and the other Agents' uncompensated time over the three year statutory period was not *de minimis*.

51. Peckham knew or should have known that Wilson and all other Agents' time spent booting up and logging into Peckham's computer network and software programs was compensable under the FLSA.

52. Peckham's failure to compensate for its Agents' pre-shift work affected Wilson and the other Agents similarly.

## FLSA COLLECTIVE ACTION ALLEGATIONS

53. Plaintiffs bring this action pursuant to 29 U.S.C. § 216(b) of the FLSA on their own behalf and on behalf of:

> *All current and former hourly call center agents who worked in a Peckham call center at any time during the last three years.*

(hereinafter referred to as the "Collective"). Plaintiffs reserve the right to amend this definition if necessary.

54. Excluded from the Collective are Peckham's executives, administrative and professional employees, including computer professionals and outside sales persons.

55. With respect to the claims set forth in this action, a collective action under the FLSA is appropriate because the employees described above are "similarly situated" to Plaintiff under 29 U.S.C. § 216(b). The class of employees on behalf of whom Plaintiff brings this collective action are similarly situated because: (a) they have been or are employed in the same or similar positions; (b) they were or are subject to the same or similar unlawful practices, policy, or plan; and (c) their claims are based upon the same factual and legal theories.

56. The employment relationships between Peckham and every proposed Collective member are the same and may differ only by name, location, and rate of pay. The key issues – the amount of uncompensated pre- and mid-shift time owed to each employee – does not vary substantially among the proposed Collective members.

57. The key legal issues are also the same for every proposed Collective member: (a) whether the 5 to 60 minutes (or more) of required pre-shift off-the-clock time amounted to compensable overtime under the FLSA; and (b) whether the 10 to 15 minutes (or more) of required mid-shift off-the-clock time amounted to compensable overtime under the FLSA.

58. Plaintiff estimates that the proposed Collective, including both current and former employees over the relevant period, may include hundreds of members. The precise number of employees should be readily available from a review of Peckham's personnel and payroll records.

59. Pursuit of this action collectively will provide the most efficient mechanism for adjudicating the claims of Plaintiff and the proposed Collective members.

60. Accordingly, the Court should conditionally certify the proposed Collective and authorize a written notice regarding the pendency of this collective action to the proposed Collective members so they can learn about this action and exercise their right to opt-in, if they so desire.

61. Plaintiff Wilson should be permitted to serve as representative of those who consent to participate in this action.

## VIOLATION OF THE FAIR LABOR STANDARDS ACT, 29 U.S.C. § 201, *et seq*. -- FAILURE TO PAY OVERTIME

62. Plaintiff re-alleges and incorporates all previous paragraphs herein.

63. At all times relevant to this action, Peckham was an employer under 29 U.S.C. § 203(d) of the FLSA, subject to the provisions of 29 U.S.C. § 201, *et seq*.

64. Peckham is engaged in interstate commerce, or in the production of goods for commerce, as defined by the FLSA.

65. At all times relevant to this action, Plaintiff and the proposed Collective members were "employees" of Peckham within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

66. Plaintiff and the proposed Collective members were either: (1) engaged in commerce; (2) engaged in the production of goods for commerce; or (3) employed in an enterprise engaged in commerce or in the production of goods for commerce.

67. At all times relevant to this action, Peckham "suffered or permitted" Plaintiff and proposed Collective members to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

68. At all times relevant to this action, Peckham required Plaintiff and the proposed Collective members to perform at least 5 to 60 minutes of pre-shift computer boot-up and login time per shift, and 10-15 minutes of mid-shift login time, but failed to pay these employees the federally mandated overtime compensation for all services performed.

69. The pre- and mid-shift off-the-clock work performed by Plaintiff and the proposed Collective members was an integral and indispensable part of their jobs as Agents and these activities and the time associated with these activities is not *de minimis*.

70. In workweeks where Plaintiff and the proposed Collective members worked 40 hours or more, the uncompensated pre-shift boot-up and login time and mid-shift login time

should have been paid at the federally mandated rate of 1.5 times each employee's regularly hourly wage. 29 U.S.C. § 207.

71. To the extent Plaintiff and the proposed Collective members received periodic bonus payments and/or other regularly recurring compensation payments that were properly classified by Peckham as nondiscretionary, the calculations Peckham used in connection with determining the regular rate of pay did not meet the requirements set forth in 29 U.S.C. § 207(e) and the Code of Federal Regulations, thus depriving Agents of additional overtime pay.

72. Plaintiff and the proposed Collective members, by virtue of their job duties and activities actually performed, are all non-exempt employees.

73. Peckham's violations of the FLSA were knowing and willful. Peckham knew or could have easily determined how long it took for its Agents to complete the pre-shift boot-up and log-in process and the mid-shift login process, and Peckham could have properly compensated Plaintiff and the proposed Collective members for the boot-up and login work they performed, but did not.

74. The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act, Plaintiff and the proposed Collective members are entitled to their unpaid overtime, plus an additional equal amount in liquidated (double) damages, plus costs and reasonable attorneys' fees.

**RELIEF REQUESTED**

WHEREFORE, Plaintiff requests the following relief:

    a. Conditionally certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth herein;

    b. Ordering Peckham to disclose in computer format, or in print if no computer readable format is available, the names and addresses of all proposed Collective members, and authorizing Plaintiffs to send notice of

    this action to all those individuals, including the publishing of notice in a manner that is reasonably calculated to apprise the Collective members of their rights by law to join and participate in this lawsuit;

c. Declaring Peckham violated the FLSA and the Department of Labor's attendant regulations as cited herein;

d. Declaring Peckham's violation of the FLSA was willful;

e. Granting judgment in favor of Plaintiff and the proposed Collective members as against Peckham and awarding Plaintiff and the proposed Collective members the full amount of damages and liquidated damages available by law;

f. Awarding reasonable attorneys' fees and costs incurred by Plaintiff in filing this action as provided by statute; and

g. Awarding such other and further relief as this Court deems appropriate.

## JURY DEMAND

Plaintiff, Lori Wilson, individually and on behalf of all others similarly situated, by and through her attorneys, hereby demands a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure and the court rules and statutes made and provided with respect to the above entitled cause.

Dated:  June 19, 2020         Respectfully Submitted,

                   */s/Jesse L. Young*
                   Jesse L. Young (P72614)
                   Thomas J. Cedoz (P82094)
                   Kreis, Enderle, Hudgins, & Borsos, P.C.
                   8225 Moorsbridge
                   PO Box 4010
                   Kalamazoo, Michigan 49003
                   (269) 324-3000
                   jyoung@kehb.com
                   tcedoz@kehb.com

                   *Attorneys for Plaintiffs*