UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LORI WILSON, on behalf of herself and
others similarly situated,

    Plaintiffs,                                    Case No. 1:20-cv-565

v.                                             Hon. Hala Y. Jarbou

PECKHAM, INC.,

    Defendant.
_____/

## OPINION

This is a putative collective action seeking damages under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201, et seq. Plaintiff Lori Wilson worked for Defendant Peckham, Inc. as a call center agent. She seeks to bring this action on behalf of herself and other individuals who have worked as agents for Peckham at its call center in Battle Creek, Michigan.

Before the Court is Peckham's motion to dismiss the complaint (ECF No. 38). Because Peckham's motion relies on evidence that is not properly before the Court on a motion to dismiss, the Court converted it into one for summary judgment. The Court gave Wilson an opportunity to respond, and she has done so. After considering the parties' submissions, the Court will deny the motion.

### I. BACKGROUND

Peckham's call center agents answer the consumer and customer telephone calls made to Peckham. According to the complaint, the agents generally work 8.5 hour shifts, five days per week, with a 30-minute unpaid lunch break per shift. Peckham paid its agents on an hourly basis; however, Wilson claims that Peckham has not properly compensated its agents as required by the FLSA. She asserts three claims.

**A. Pre-Shift Work**

First, Wilson alleges that agents performed significant "pre-shift" work that was not compensated. (Am. Compl. 6, ECF No. 31.) When agents arrived at the call center to start their shift, they followed a specific "protocol" in order to "start up and log into the company's computer network" before performing their work. (*Id.* ¶ 38.) According to Wilson, that protocol consisted of the following steps:

> a. Turning on the computer;[1]
>
> b. If the computer had been off or asleep, I was prompted to login to Windows using the ctrl+alt+delete function and enter my username and password;
>
> c. After logging into Windows and connecting to Peckham's network, I began the required login process to access the necessary computer applications;
>
> d. I opened Peckham's intranet timekeeping program and entered my assigned username and password;
>
> e. After navigating to the proper page, I clicked a box to "clock in"; and
>
> f. I logged into my phone and began receiving phone calls.

(Wilson Decl. ¶ 6, ECF No. 50-2.)

For Wilson, this process sometimes took only 5 minutes to complete. At other times, the process took as long as 60 minutes because the computers were slow or because she encountered "technical problems." (*See id.* ¶ 7.) At some point, Peckham gave its agents a "grace period," meaning that they could "clock in" up to 15 minutes before the start of their shift and receive compensation for that time; however, Wilson contends that the bootup and login process that occurred *before* she clocked in constitutes "off-the-clock" work for which she and other agents were not compensated. (*Id.* ¶ 11.) And because agents like Wilson typically worked shifts totaling

---

[1] Peckham contends that its agents are not required to turn on their computers at the start of their shifts because it instructs them not to turn their computers off at the end of their shifts. However, Wilson's declaration says otherwise. The Court must view the evidence in a light most favorable to Wilson.

2

40 hours per week or more, they did not receive overtime pay for this additional work, which would have been compensable at one and a half times the rate of regular pay.

### B. Mid-Shift Work

Second, Wilson claims that Peckham required its agents to perform off-the-clock work during their 30-minute, unpaid meal periods, when it should have paid them for this work. Wilson and other agents regularly returned to their workspaces 2-5 minutes early so that they would have enough time to log back into their computer and be "phone ready" by the end of their meal breaks. (*Id.* ¶¶ 20-21.) In addition, Peckham maintained a "policy and practice" of failing to pay agents for unscheduled breaks lasting less than 20 minutes. (*Id.* ¶ 22.)

### C. Regular Rate Calculation

Finally, Wilson claims that Peckham did not pay its agents the correct overtime rate. Peckham allegedly used the agents' base hourly rate as their regular rate of pay, ignoring "shift premiums and other compensation" given to agents as part of their pay. (*Id.* ¶ 25.)

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Courts consider the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor." *Quigley v. Tuong Vinh Thai*, 707 F.3d 675, 679 (6th Cir. 2013). The Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

### III. ANALYSIS

#### A. Pre-Shift Work

As indicated above, Wilson claims that Peckham's call center agents are entitled to compensation for the time spent booting up and logging into their computers before they clock in at the start of the day. According to Wilson, this process sometimes requires up to 60 minutes because the computers are slow or because of technical problems.

##### 1. FLSA

The FLSA is designed to ensure that covered employees are paid for all time that they work, and that overtime wages be paid for all time worked in excess of 40 hours per workweek. The act does not define "work," "workweek," or "workday." *See* 29 U.S.C. § 203 (definitions).

Early Supreme Court cases defined these terms broadly. *See IBP, Inc. v. Alvarez*, 546 U.S. 21, 25 (2005) (reviewing the development of Supreme Court jurisprudence on the FLSA). In one case, it defined work as "physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business." *Tenn. Coal, Iron & R.R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 598 (1944). In another case, it held that "exertion" is not strictly necessary for something to constitute work: "an employer, if he chooses, may hire a man to do nothing, or to do nothing but wait for something to happen." *Armour & Co. v. Wantock*, 323 U.S. 126, 133 (1944). It also held that a "workweek" covers "all time during which an employee is necessarily required to be on the employer's premises, on duty or at a prescribed workplace." *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 690-91 (1946). Using the latter definition, the Court concluded that "time necessarily spent by employees walking from timeclocks near the factory entrance gate to their workstations[,] must be treated as part of the workweek." *IBP*, 546 U.S. at 25 (citing *Mt. Clemens Pottery*, 328 U.S. at 691-92).

4

Congress responded to *Mt. Clemens Pottery* by passing the Portal-to-Portal Act (PPA), 29 U.S.C. § 251 *et seq.*  That Act did not change the Supreme Court's definitions; instead, it excluded the following activities from those that are compensable under the FLSA:

> (1) walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform, and
>
> (2) activities which are preliminary or postliminary to said principal activity or activities,
>
> which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities.  For purposes of this subsection, the use of an employer's vehicle for travel by an employee and activities performed by an employee which are incidental to the use of such vehicle for commuting shall not be considered part of the employee's principal activities if the use of such vehicle for travel is within the normal commuting area for the employer's business or establishment and the use of the employer's vehicle is subject to an agreement on the part of the employer and the employee or representative of such employee.

29 U.S.C. § 254(a).

### 2. Principal or Preliminary Activity

Peckham argues that the time spent by agents completing the bootup and login process is not compensable under the FLSA because that process is a "preliminary activity" excludable by the PPA, rather than a principal activity.

The PPA does not apply to principal activities; thus, the Court must determine whether the bootup and login process is a principal activity or a preliminary one.  A "principal activity" is one which "the employee is employed to perform."  29 U.S.C. § 254(a).  The term also "embraces all activities which are an *integral and indispensable part* of the principal activities[.]"  *Steiner v. Mitchell*, 350 U.S. 247, 252 (1956) (emphasis added, quotation marks omitted).  Consequently, a principal activity can include "activities performed either before or after the regular work shift, on or off the production line . . . if those activities are an integral and indispensable part of the

5

principal activities for which covered [employees] are employed and are not specifically excluded by [the PPA]." *Id.* at 256. In *Steiner*, for instance, the Supreme Court held that, for employees in a battery manufacturing facility, donning and doffing protective gear was a principal activity because it was necessary for the nature of the work that the employees performed in the factory. *Id.* at 252. Similarly, in *IBP*, the Supreme Court affirmed that donning and doffing "unique protective gear" was a principal activity for employees hired to cut and bag meat. *IBP*, 546 U.S. at 32. And in *Mitchell v. King Packing Co.*, 350 U.S. 260 (1956), the Court concluded that the time meatpacker employees spent sharpening their knives was compensable as a principal activity because dull knives could "slow down production," "affect the appearance of the meat as well as the quality of the hides," "cause waste," and lead to "accidents." *Id.* at 262.

The Supreme Court subsequently clarified that an "activity is integral and indispensable to the principal activities that an employee is employed to perform—and thus compensable under the FLSA—if it is an intrinsic element of those activities *and one with which the employee cannot dispense if he is to perform his principal activities*." Integrity Staffing Sol'ns, Inc. v. Busk, 574 U.S. 27, 37 (2014) (emphasis added). In *Integrity Staffing*, the Court held that warehouse employees were not entitled to compensation for time spent undergoing security screenings and waiting for those screenings before and after their shifts because those activities were not necessary and indispensable; the employer "could have eliminated the screenings altogether without impairing the employees' ability to complete their work." *Id.* at 35-37. Similarly, Wilson contends that the act of booting up and logging in to her work computer is a principal activity because it is necessary and indispensable to her work as a call center agent. Without a working computer connected to the company's network, she cannot perform her job. (*See* Wilson Decl. ¶ 5.)

6

Some courts agree with Wilson's argument.  For instance, in *Gaffers v. Kelly Services, Inc.*, No. 16-cv-10128 (E.D. Mich. June 2, 2016), the district court determined that a plaintiff stated a plausible FLSA claim based on the defendant's failure to pay the plaintiff for time spent "starting up and shutting down or logging into or out of electronic systems that he is required to use in order to perform his job as a virtual call center agent." *Id.* (Mot'n Hr'g Tr. 13, ECF No. 66).  That court reasoned that "[t]he requirement of logging into and out of electronics systems needed to process calls is at least integral to the work of answering phone calls," similar to donning and doffing protective gear. *Id.* (Mot. Hr'g Tr. 17).  The court in *Jackson v. ThinkDirect Mktg. Grp., Inc.*, No. 1:16-cv-03749, 2019 WL 8277236 (N.D. Ga. Dec. 9, 2019), reached a similar conclusion for virtual call center agents after the defendant conceded that "logging into its VPN system is indispensable." *Id.* at *3; *see also Peterson v. Nelnet Diversified Sols., LLC*, 400 F. Supp. 3d 1122, 1135 (D. Col. 2019) (finding that "setting up the computer and loading the relevant programs to become call-ready is an integral and indispensable part of the principal activities for which [the customer service representatives] are employed[.]" (quotation marks omitted)).

Of the foregoing cases, *Peterson* is the most similar to this one.  In that case, as here, call center agents claimed that they were entitled to compensation for time spent booting up their workstations and logging in before clocking into the timekeeping software on their terminals.  *See Peterson*, 400 F. Supp. 3d at 1129-30.  The court concluded that the "entire time the [call center representative] spends . . . becoming call ready . . . is . . . sensibly viewed as one continuous process required to prepare [these employees] to perform the principal activity for which they were hired, i.e., servicing student loans by interacting with borrowers via email or telephone." *Id.* at 1136.  "This is work that is done for the benefit of the employer and is intertwined with the substantive performance of the day's labor . . . ." *Id.*

7

Peckham responds that time spent booting up a computer and logging in falls within the PPA's exclusion for preliminary activities. Regulations adopted by the Secretary of Labor in 1947 indicate that non-compensable preliminary activities include "checking in and out and waiting in line to do so[.]" 29 C.F.R. § 790.7(g). Peckham argues that the time spent by its agents booting up their computers and logging in is the modern equivalent of checking in or waiting to do so.

In *IBP*, the Supreme Court cited the foregoing labor regulations when deciding that time spent waiting to don protective gear was not compensable for the employees in that case. *See IBP*, 546 U.S. at 40. Although donning protective gear was necessary and indispensable to the employees' principal activity, *waiting* to do so "may or may not be necessary in particular situations or for every employee." *Id.* The Court was not persuaded that such waiting, which was "two steps removed from the productive activity on the assembly line," was compensable as a principal activity. *Id.* at 42. "[T]he fact that certain preshift activities are necessary for employees to engage in their principal activities does not mean that those preshift activities are 'integral and indispensable' to a 'principal activity[.]'" *Id.* at 40. Peckham argues that this Court should reach the same result here for time spent by its agents on the bootup and login process.

Alternatively, Peckham argues that turning on a computer and logging in is simply an extension of the employee's commute to her digital workspace. The employee does not truly reach that workspace until the computer is on, her password is authenticated, and she clocks in for work. Peckham argues that any activity before that moment should therefore be treated as preliminary under the PPA.

Some court decisions lend support to Peckham's arguments. For instance, in *Bustillos v. Board of County Commissioners of Hidalgo County*, No. CV 13-0971 JB/GBW, 2015 WL 7873813 (D.N.M. Oct. 20, 2015), *aff'd in relevant part, rev'd in part sub nom. Jimenez v. Board*

8

*of County Commissioners of Hidalgo County*, 697 F. App'x 597 (10th Cir. 2017), the court concluded that a 911 call center operator was not entitled to compensation for certain preshift activities, including logging into her computer, because these activities were not "'work of consequence performed for an employer,'" and were instead more like "'the ingress and egress process.'" *Id.* at *17 (quoting *Integrity Staffing*, 574 U.S. at 38 (Sotomayor, J., concurring)); *see also Faust v. Comcast Cable Commc'ns Mgmt., LLC*, Nos. WMN–10–2336, WMN–12–2909, 2014 WL 3534008, at *14 (D. Md. July 15, 2014) (rejecting as "farfetched" plaintiffs' argument that booting up a computer starts the workday); *Lang v. Pa. Higher Educ. Assistance Agency*, No. 1:12-cv-1247, 2013 WL 11232099, at *9 (M.D. Pa. Nov. 20, 2013) (noting "considerable dispute" about whether time spent on "preparatory activities" like "turning on a computer and logging in to software applications" is compensable), *rev'd on other grounds*, 610 F. App'x 158 (3d Cir. 2015).[2]

On the whole, the Court finds Wilson's argument to be more persuasive. Starting a computer and logging into it at the start of the workday is different from waiting in line to check in. For one thing, a traditional check in process occurs somewhere other than the place where the employee actually performs her work. If one purpose of the PPA was to *exclude* time spent *walking* from building entrances and time clocks to the employee's workspace as compensable time, then it makes sense to exclude other activities occurring *before* that walk time, including time waiting to enter the building or to check in at another location. But here, Peckham's agents had already arrived at their workspaces when they started their computers. Thus, time spent at

---

[2] Other cases cited by Peckham do not apply. In *Chambers v. Sears Roebuck & Co.*, 428 F. App'x 400 (5th Cir. 2011), the Fifth Circuit held that home service technicians downloading their first assignment of the day were not entitled to compensation for this activity because it was incidental to their commutes. *Id.* at 417; *accord Rutti v. Lojack Corp.*, 596 F.3d 1046, 1057 (9th Cir. 2010) (receiving, mapping, and prioritizing jobs are related to the employee's commute). The employees in *Chambers* and *Rutti* were simply communicating with their employers to learn the location of their first worksite for that day. They needed that information to begin their commutes, but activities incidental to a commute are not compensable. *See* 29 U.S.C. § 254(a). In contrast, call center agents at Peckham are already at their place of work when they turn on their computers. Activating those computers has no relation to their commutes.

9

their workspaces looks different from time waiting at another location. In other words, contrary to *Bustillos*, the bootup and login time looks different from the "ingress and egress" process. *Cf. Bustillos*, 2015 WL 7873813, at *17. It does not involve "traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform." 29 U.S.C. § 254(a).

In addition, the computers in this case are different from traditional time clocks in that the computers are necessary for the agents to perform their work. A warehouse employee could avoid a traditional time clock altogether and still perform her principal activity, whereas call center agents cannot avoid booting up and logging into their computers if they are to perform the work for which they were hired. Thus, unlike the security screenings in *Integrity Staffing*, the bootup and login process is not something that Peckham can eliminate without impairing its agents' ability to answer customer calls. That process is akin to preparing a tool that the employee must use throughout the workday, like sharpening a knife, *see Mitchell*, 350 U.S. at 262, oiling a lathe, *see* 29 C.F.R. § 785.24 (stating that oiling, greasing, or cleaning a lathe at the start of a workday should be considered a principal activity), or powering up and testing an x-ray machine, *see Kosakow v. New Rochelle Radiology Assocs., P.C.*, 274 F.3d 706, 715, 718 (2d Cir. 2001). *See also* U.S. Dep't of Labor, Fact Sheet #64: Call Centers under the Fair Labor Standards Act (FLSA) ("An example of the first principal activity of the day for agents/specialists/representatives working in call centers includes starting the computer to download work instructions, computer applications, and work-related emails."), available at https://www.dol.gov/sites/dolgov/files/WHD/legacy/files/whdfs64.pdf.

In short, viewing the evidence in a light most favorable to Wilson, there are sufficient facts from which a reasonable jury could infer that the bootup and login process is compensable as a

principal activity, integral and indispensable to the work for which Wilson and other agents were hired.

### 3. Grace Period

Peckham contends that, to the extent its agents needed to perform pre-shift work, it already offers a 15-minute grace period. As Wilson alleges in her complaint, Peckham permits its agents to clock in up to 15 minutes before the start of their shifts and receive compensation for the time between the clock in and the beginning of the shift. However, this grace period does not address the bulk of the "work" at issue in Wilson's claim, which occurs *before* agents clock in. The first four steps in the protocol described by Wilson occur *before* she uses the timekeeping software to clock in for the day. Wilson claims that the time required to complete those four steps is not compensated. The grace period does not compensate for that time; thus, it does not preclude Wilson from asserting her claim.

### 4. Missing Punch Policy

Next, Peckham contends that it has a "missing punch" policy that permits its agents to obtain compensation whenever they experience technical problems that prevent them from promptly clocking in. Peckham provides a handful of completed "missing punch forms" that were purportedly used by Wilson to correct her "clock in" or "clock out" times. (*See* Missing Punch Forms, ECF No. 39-2.) The forms are not authenticated, however. The forms also state that "[a]ll requests must follow procedures and policies as outlined in the Peckham, Inc. Handbook"; however, Peckham did not provide a copy of this handbook. (*Id.*)

In response to Wilson's motion to certify a collective action, but not in support of its motion for dismissal/summary judgment, Peckham has offered several employee affidavits that speak to the login process and the missing punch policy. One employee, a call center agent, states that the login process generally takes "thirty seconds to a minute," and that if she experiences any "delay,"

11

"for any reason and for any increment of time," she uses a missing punch form so that she is compensated for her time. (Holmgren Decl. ¶¶ 7, 11, ECF No. 41-3.) Every such form she has ever submitted to "leadership" has been accepted. (*Id.* ¶ 12.) Another employee, the "Program Director," states that agents' computers are always on at the start of a shift and that the check in process takes "approximately one minute and fifteen seconds"; if the agent experiences a delay "beyond the one minute of time expected to do so," agents can use a missing punch form to receive credit for time "not captured on the agent's time clock due to a delay." (Kovick Decl. ¶¶ 9, 16, ECF No. 41-1.)

"[A]n FLSA plaintiff must prove by a preponderance of the evidence that he or she performed work for which he or she was not properly compensated." *White v. Baptist Mem'l Health Care Corp.*, 699 F.3d 869, 873 (6th Cir. 2012) (quoting *Myers v. Copper Cellar Corp.*, 192 F.3d 546, 551 (6th Cir. 1999)). "Work not requested but suffered or permitted is work time." 29 C.F.R. § 785.11. "If an 'employer knows or has reason to believe that [a worker] is continuing to work [then] the time is working time.'" 29 C.F.R. § 785.11. However, "if an employer establishes a reasonable process for an employee to report uncompensated work time the employer is not liable for non-payment if the employee fails to follow the established process." *White*, 699 F.3d at 876. Accordingly, Peckham argues that it established a reasonable process for reporting uncompensated work time and that Wilson failed to follow this process.

Wilson responds that there are two exceptions to the rule in *White*. Employers must pay for unreported time if (1) they "prevented" or "discouraged" the employees from reporting or (2) they "were otherwise notified of the employees' unreported work." *Id.* Wilson offers no

evidence that Peckham prevented or discouraged its employees from reporting overtime.[3]  Instead, Wilson contends that Peckham was aware of the overtime work but did not compensate it.  Indeed, Peckham ostensibly requires all of its agents to turn on their computers and login before clocking into the timekeeping software, and presumably knows that this process requires *some* amount of time.  In addition, Wilson avers that she and other agents "regularly informed . . . supervisors of the technical delays and problems booting up and logging of Peckham's systems while off-the-clock."  (Wilson Decl. ¶ 14.)  These facts suggest that Peckham was aware of some uncompensated work time and, thus, *White* might not apply.

More importantly, summary judgment on this issue is not appropriate because the scope of the missing punch policy is unclear.  To the extent that there is a written policy (as the missing punch forms suggest), Peckham did not provide a copy of it to the Court.  The only evidence of its existence derives from unauthenticated "missing punch forms" that lack context, and employee affidavits that Peckham filed in response to Wilson's motion for certification of a collective action.  Plaintiffs have not had an opportunity to test the assertions in those affidavits.  And in any case, it is not clear when and to what extent Peckham permits its agents to seek compensation for the bootup and login procedure.  Although the employee affidavits suggest that agents are entitled to compensation for any "delay" in clocking in, it is not clear what Peckham considers to be a delay.  If the bootup and login process takes *at least* five minutes at the start of every shift (as Wilson claims), then Peckham likely does not consider that amount of time to be a delay.  Otherwise, it would compensate its agents for that time without requiring them to complete a missing punch form for every shift.  In short, at this early stage of the proceedings, the evidence provided by

---

[3] Wilson avers that Peckham's supervisors discouraged agents from reporting pre-shift time by telling them that they could not contact the "IT help desk" without permission.  (Wilson Decl. ¶ 15.)  However, it is not clear how requiring agents to obtain permission to contact the help desk discouraged them from reporting time.

13

Peckham, particularly the evidence it submitted in support of its summary judgment motion, is not sufficient to justify an award of summary judgment based on the purported existence of a missing punch policy.

### 5. De Minimis Exception

Next, Peckham contends that any uncompensated time during the bootup and login process is de minimis. The Court "reject[s] claims for compensation when they are based on activities undertaken for de minimis amounts of time or are too difficult in practice to record." *Eberline v. Douglas J. Holdings, Inc.*, 982 F.3d 1006, 1018 (6th Cir. 2020); *see also Mt. Clemens Pottery*, 328 U.S. at 692 ("When the matter in issue concerns only a few seconds or minutes of work beyond the scheduled working hours, such trifles may be disregarded. . . . [I]nsubstantial and insignificant periods of time spent in preliminary activities need not be included in the statutory workweek."). The Court of Appeals has indicated that three factors are relevant for determining whether otherwise compensable time is de minimis: "1) the practical administrative difficulty of recording the additional time; 2) the size of the claim in the aggregate; and 3) whether 'the claimants performed the work on a regular basis.'" *Brock v. City of Cincinnati*, 236 F.3d 793, 804 (6th Cir. 2001) (quoting *Lindow v. United States*, 738 F.2d 1057, 1062-63 (9th Cir. 1984)).

Common sense suggests that it would be administratively difficult to record the amount of time required for the bootup and login process for each individual, on a daily basis, which favors Peckham. On the other hand, Wilson contends that she and other agents must undergo this process every day, which favors Wilson. But what may be the most important factor—the size of the claim in the aggregate—is disputed. Wilson avers that the process requires somewhere between 5 and 60 minutes. In contrast, two of Peckham's agents state that the process typically takes less than two minutes. (Philo Decl. ¶ 4, ECF No. 41-2; Holmgren Decl. ¶ 7.) The Court cannot resolve that

14

dispute at this stage. The Court must view the evidence in the light most favorable to Plaintiff. Suffice it to say that a delay of up to 60 minutes would not be de minimis.

Peckham responds that the low end of Wilson's range (5 minutes) is de minimis, and that any time beyond that is not compensable because Peckham has a policy that allows its agents to seek compensation for delays in clocking in. Peckham may be correct, but at this stage of the proceedings, the details of the missing punch policy are unclear, as are Peckham's practices in relation to it. The Court is not inclined to grant summary judgment based on the policy before Wilson has had any opportunity for discovery.

### B. Mid-Shift Work

Wilson claims that Peckham did not pay its agents for compensable time worked during the day, including time worked during meal breaks and time used for unscheduled breaks of less than 20 minutes in duration.

#### 1. Meal Breaks

The FLSA does not require an employer to compensate its employees for "[b]ona fide meal periods." 29 C.F.R. § 785.19. However, the "employee must be completely relieved from duty for the purposes of eating regular meals." *Id.* "The employee is not relieved if he is required to perform any duties, whether active or inactive, while eating." *Id.* For instance, an employee "who is required to be at his machine is working while eating." *Id.*

Wilson contends that Peckham provided its agents a 30-minute unpaid meal break per shift but required them to be ready to receive calls by the end of that break. In order to be ready, Wilson and other agents had to return early from their break to go through an "abbreviated" version of the pre-shift login process. (Am. Compl. ¶ 51.) Wilson estimates that this "work" took "2-5 minutes (or more)" per shift, but Peckham provided no compensation for that time. (Wilson Decl. ¶ 16.)

15

Peckham argues that this time was de minimis, but Peckham's argument is less persuasive at this point than it is when considering only the *pre*-shift bootup and login process. Considered in the aggregate, the pre-shift process and the mid-shift process are less likely to be de minimis than the pre-shift process on its own. In short, at this stage, summary judgment is not appropriate for resolving whether the time spent by Wilson and other agents during lunch breaks is de minimis.

### 2. Rest Breaks

Department of Labor regulations recognize that "[r]est periods of short duration, running from 5 minutes to about 20 minutes, are common in industry." 29 C.F.R. § 758.15. "They must be counted as hours worked." *Id.* However, Wilson claims that Peckham had a "policy and practice" of not paying agents for any unscheduled rest breaks of less than 20 minutes in duration. (Wilson Decl. ¶ 22.)

Peckham responds that Wilson's time records prove this assertion is false. However, the records provided by Peckham are neither authenticated nor decipherable. (*See* Records, ECF No. 39-1.) All that they show are dates and times. Even if the Court could discern the meaning of these records, they do not show that Peckham actually paid Wilson for any particular amount of time.

Peckham also relies upon an email from a Peckham employee stating that "Agents working 8 hours will still get up to a maximum of 30 paid minutes per shift" of break time. (Kovick Email, ECF No. 33-8.) That email is hearsay and does not refute Wilson's contention that Peckham did not pay agents for unscheduled rest breaks. *See Tranter v. Orick*, 460 F. App'x 513, 514 (6th Cir. 2012) ("It is well established that a court may not consider hearsay when deciding a summary judgment motion."). Accordingly, Peckham has not established that it is entitled to summary judgment for Wilson's claim regarding uncompensated rest breaks.

### C. Regular Rate Calculation

The FLSA requires employers to compensate employees at one and a half times their "regular rate" if they work over 40 hours per week. 29 U.S.C. § 207(a)(1). Wilson claims that Peckham did not properly calculate the regular rate of its agents when paying them for overtime work. According to Wilson, Peckham used their base hourly rate as the regular rate; it did not account for shift premiums paid to agents above their base rate. (*See* Wilson Decl. ¶ 25.)

Peckham apparently admits that it made a mistake in this regard. In its reply brief, Peckham asserts that it audited its policies and discovered an "inadvertent error" in its calculations, resulting in "a total overpayment of $55,608.00 . . . and a total underpayment of only $6,202.00." (Peckham's Reply Br. 11, ECF No. 51.) Peckham contends that the Court should dismiss this claim because it corrected its error by providing Wilson "and the opt-ins" a "double payment for any week that resulted in an underpayment[.]" *Id.*

The Court will not grant Peckham summary judgment on this particular claim because Peckham raised this argument for the first time in its reply brief. The Court generally does not consider new arguments raised for the first time in a reply brief. *See Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 578 (6th Cir. 2002) ("An argument raised for the first time in a reply brief will not be considered by this Court."). Wilson has not had an opportunity to respond to the argument. Moreover, because no discovery has taken place, she is not likely to possess the records that would allow her to verify Peckham's calculations.

## V. CONCLUSION

In short, Peckham is not entitled to summary judgment. Accordingly, the Court will deny Peckham's motion for dismissal, construed as a motion for summary judgment. An order will enter consistent with this Opinion.

Dated:  July 26, 2021                        /s/ Hala Y. Jarbou
                                             HALA Y. JARBOU
                                             UNITED STATES DISTRICT JUDGE