**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

| | |
|---|---|
| LORI WILSON, individuals, and on behalf of all others similarly situated,<br><br>      Plaintiffs,<br><br>  v.<br><br>PECKHAM, INC.,<br><br>      Defendant. | Civil Case No. 1:20-cv-00565<br><br>Hon. Hala Y. Jarbou<br>Hon. Phillip J. Green |

## JOINT MOTION FOR COURT APPROVAL OF FLSA SETTLEMENT AGREEMENT AND TO DISMISS THE CASE WITH PREJUDICE

NOW COMES the parties, Plaintiff Lori Wilson ("Wilson") and Defendant Peckham, Inc. ("Peckham") (together, the "Parties"), by their undersigned counsel, and file this Joint Motion for the Court's Approval of the Parties' FLSA Settlement Agreement. In support of this Motion, the Parties state as follows:

1. This Joint Motion is filed pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*. ("FLSA").

2. This lawsuit is a FLSA collective action in which Wilson, on behalf of herself and eighteen Opt-In Plaintiffs (collectively, the "Plaintiffs"), allege Peckham did not compensate them properly under the Act. Specifically, Plaintiffs allege unpaid overtime wages for pre-shift work, post-lunch work, and breaks as well as a failure by Peckham to properly calculate the regular rate of pay.

3. Plaintiffs are current and former Peckham call center employees at Peckham's Battle Creek, Michigan office. The Battle Creek office is located in the U.S. Defense Logistics Agency's ("DLA") Battle Creek facility.

4. On June 19, 2020, Plaintiff Wilson filed her asserted FLSA collective action complaint and on January 11, 2021, Plaintiff Wilson amended her complaint. (ECF Nos. 1 and 31).

5. The Parties engaged in early mediation attempts, which were unsuccessful. Thus, on January 13, 2021, Plaintiff Wilson filed a motion for conditional class certification. (ECF No. 33).

6. Defendant filed a motion to dismiss the lawsuit for failure to state a claim. (ECF No. 38).

7. Defendant's motion was converted to a motion for summary judgment by the Court and after additional briefing, the Court ultimately denied the motion for summary judgment. (ECF Nos. 45-47, 50-53).

8. Thereafter, the Parties stipulated to conditional certification and court-authorized notice for the following collective: all current and former hourly call center agents who worked in Peckham's Battle Creek call center at any time during the past three years. (ECF No. 60).

9. After the Opt-In Period, a total of 37 Plaintiffs joined the lawsuit. Of these Plaintiffs, five filed notices of withdrawal from the litigation (ECF Nos. 72, 79, 90, and 81).

10. The notice documents provided to all Opt-In Plaintiffs informed them of Plaintiff Wilson's authority to settle this matter on their behalf (ECF No 59-1, PageID.1652) and the Opt-In Plaintiff's each signed and filed a Consent Form which expressly indicates their acknowledgement and agreement to be bound by any adjudication in the lawsuit, whether favorable or unfavorable. (ECF Nos. 18, 37, 72, 79, 80, 81).

11. After the notice and opt-in period, the Parties initiated discovery by exchanging written discovery.

12. During this initial discovery period, 14 Opt-In Plaintiffs were unresponsive to all attempts by their own counsel to contact them, and failed to respond to Defendant's written discovery demands. Thus, on May 20, 2022, Defendant moved to dismiss these 14 Opt-Ins with prejudice, which was granted as to 13 of the 14 Opt-In Plaintiffs. (ECF No. 90).

13. On June 9, 2022, in advance of initiating significant additional discovery and incurring the significant costs of such discovery, the Parties participated in a settlement conference before Magistrate Judge Phillip J. Green.

14. Over the course of the settlement conference and with the assistance of Judge Green, the Parties successfully negotiated the material terms of a settlement agreement that would resolve the lawsuit.

15. The settlement reached is based on a full understanding by the Parties of their respective positions and the risk/benefits to concluding this action as compared to continuing the action.

16. The Parties jointly prepared a Settlement Agreement to include all material terms and conditions and are now seeking the Court's approval of the Settlement Agreement and dismissal of the lawsuit with prejudice.

17. The brief and Settlement Agreement filed with this Motion provides a fulsome understanding of the terms of the negotiated agreement between the Parties.

18. The Parties, who are represented by counsel, agree that the proposed Settlement Agreement represents a reasonable compromise of a bona fide dispute of Plaintiff Wilson's FLSA claims.

WHEREFORE, the Parties, by their undersigned counsel, respectfully request the Court to grant their Joint Motion and enter an Order approving the Settlement Agreement and dismissing the case with prejudice and without further costs or fees to either party.

**Respectfully submitted on June 30, 2022.**

| PLAINTIFFS | PECKHAM, INC. |
|---|---|
| /s/ *Jesse L. Young* <br> **Jesse L. Young** <br> Sommers Schwartz, P.C. <br> One Towne Square, 17th Floor <br> Southfield, Michigan 48076 <br> jyoung@sommerspc.com <br> Tel: 248-355-0300 <br> *Attorneys for Plaintiffs* | */s/ Scott R. Eldridge* <br> **Scott R. Eldridge** <br> **Ashley N. Higginson** <br> **Schuyler Ferguson** <br> Miller, Canfield, Paddock, and Stone, P.L.C. <br> 120 N. Washington Square, Suite 900 <br> Lansing, Michigan <br> Office:  517-487-2070 <br> eldridge@millercanfield.com <br> higginson@millercanfield.com <br> ferguson@millercanfield.com <br> *Attorneys for Defendant* |

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| LORI WILSON, individuals, and on behalf of all others similarly situated,<br><br>　　　　　　　Plaintiffs,<br><br>　　v.<br><br>PECKHAM, INC.,<br><br>　　　　　　　Defendant. | Civil Case No. 1:20-cv-00565<br><br>Hon. Hala Y. Jarbou<br>Hon. Phillip J. Green |

**BRIEF IN SUPPORT OF JOINT MOTION FOR COURT APPROVAL OF FLSA SETTLEMENT AGREEMENT AND TO DISMISS THE CASE WITH PREJUDICE**

　　　　The parties, Plaintiff Lori Wilson ("Wilson") and Defendant Peckham, Inc. ("Peckham"), (collectively, the "Parties") by their undersigned counsel, hereby file this Brief in support of their Joint Motion for Court Approval of FLSA Settlement Agreement and to Dismiss the Case with Prejudice.  The Parties' Settlement Agreement is attached hereto as **Exhibit 1**.

## FACTUAL BACKGROUND

　　　　Plaintiff filed this action on June 19, 2020 on behalf of herself and those similarly situated. Her amended complaint alleges violations of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA").  More specifically, Plaintiff alleges that Peckham violated the FLSA by permitting Plaintiff and other call center agents to perform unpaid work before and during their scheduled shifts, but failing to pay these employees the federally mandated overtime compensation. Additionally, Wilson alleges that Peckham failed to utilize the FLSA's required "regular rate" calculation.

　　　　Defendant denies the claims brought by Plaintiff.  In summary, Peckham states that Plaintiff has failed to identify any compensable work activities for which she was not paid and alternatively that any compensable work activities conducted pre-shift or post-lunch were *de*

*minimus* and thus not compensable. Additionally, Peckham argues that it had a policy in place by which Plaintiff and call center agents could inform Peckham of any compensable work activities that were not captured in their time clock record called a "Missing Punch" form. Further, Defendant argued that Plaintiff's regular rate claim was moot and that she has failed to plead any failure to provide payment for breaks of under twenty minutes.

On February 2, 2021, Defendant filed a motion to dismiss the lawsuit for failure to state a claim. (ECF No. 38). The Court converted Defendant's motion to a motion for summary judgment and on July 26, 2021, the Court ultimately denied the motion for summary judgment. (ECF Nos. 45-47, 50-53). Thereafter, the Parties stipulated to conditional certification and court-authorized notice for the following collective: all current and former hourly call center agents who worked in Peckham's Battle Creek call center at any time during the past three years. (ECF No. 60). After the Opt-In Period, a total of 37 Plaintiffs joined the lawsuit. Of these Plaintiffs, five filed notices of withdrawal from the litigation (ECF Nos. 81, 80, 79, and 72). Further, on May 20, 2022, Defendant moved to dismiss 14 additional Opt-In Plaintiffs with prejudice, which was granted on June 9, 2022 as to 13 of the 14 Opt-In Plaintiffs. (ECF No. 90).

Thus, Plaintiff Wilson and 18 Opt-In Plaintiffs remain a part of the collective. The notice documents provided to all Opt-In Plaintiffs inform them of Plaintiff Wilson's authority to settle this matter on their behalf (ECF No 59-1, PageID.1652) and the Opt-In Plaintiffs signed and filed a Consent Form, which expressly indicates their acknowledgement and agreement to be bound by any adjudication in the lawsuit, whether favorable or unfavorable. (ECF Nos. 81, 80, 79, 72, 37, and 18).

While the Parties do not agree on the facts and disagree upon the degree of liability (if any) on the part of the Defendant Peckham, in evaluating and understanding the uncertainty and

extensive cost of continued litigation, an amicable settlement was reached between the parties at their June 9, 2022 Settlement Conference before Magistrate Judge Phillip J. Green. The settlement was reduced to a Settlement Agreement. (**Exhibit 1**.)

## MEMORANDUM OF LAW

The Sixth Circuit has yet to rule definitively on the question, but appears to presume that, as a general rule, claims under the FLSA "may not be settled without supervision of either the Secretary of Labor or a district court." *Cruz v. Don Pancho Mkt., LLC,* No. 1:15-CV-00698-PLM, 2016 WL 4531142, at *2 (W.D. Mich. Aug. 23, 2016), citing *Lynn's Foods Stores, Inc. v. United States*, 679 F.2d 1350, 1352-53 (11th Cir. 1982) (other citations omitted).

Assuming approval is required, where a settlement of a Plaintiff's FLSA suit is a fair resolution of the issues, the Court may approve the settlement "to promote the policy of encouraging settlement of litigation." *Lynn's Food Stores,* 679 F.2d at 1354. In determining whether to approve a settlement agreement, the reviewing Court should determine that the compromise is a fair and reasonable resolution of a bona fide dispute over FLSA provisions. *Id.*; *Smolinski v. Ruben & Michelle Enterprises Inc.,* No. 16-CV-13612, 2017 WL 835592, at *1 (E.D. Mich. Mar. 3, 2017). Courts therefore consider the following factors: (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense and lengthy duration of the litigation; (3) the state of the proceedings; (4) the probability of Plaintiff's success on the merits; (5) the range of possible recovery; and (6) the "public interest." *Does 1-2 v. Deja Vu Servs., Inc.*, 925 F.3d 886, 894–95 (6th Cir. 2019).[1] The Parties request that the Court approve the Settlement Agreement here, because it constitutes a fair and reasonable resolution to this dispute.

---

[1] Courts also consider the "opinions of class counsel and class representatives," and the "reaction of absent class members". *Id.* Here, these factors need not be assessed given Plaintiff and her counsel are jointly filing this motion and as such, obviously agree with the proposed Settlement

3

### 1.     There is No Existence of Fraud of Collusion Behind the Settlement.

The Parties have entered into the Settlement Agreement pursuant to an arms-length negotiation between their respective counsel, and as a result of a facilitation mediation with Judge Green, not as the product of fraud or collusion. Both parties were represented by experienced counsel of their choosing.

Further, the Settlement Agreement provides Plaintiffs with a fair and proportioned amount of their disputed overtime wages, as well as a service award for Plaintiff Wilson, and reasonable payment for attorneys' fees and costs. The amount to be provided to each Plaintiff was calculated solely by Plaintiffs' counsel. The Parties' Settlement Agreement also eliminates the risks and costs of continued litigation, which could result in the Plaintiffs obtaining no recovery. For all these reasons, the record supports a finding that the Agreement constitutes a fair and reasonable resolution to the lawsuit and that it is not indicative of fraud or collusion.

### 2.     The Complexity, Expense, and Duration of the Litigation

The complexity, expense, and time associated with litigating this matter also weighs in favor of this settlement. The litigation of the legal and factual issues underlying this dispute have already required significant time and expense for all parties and will continue to do so if litigation drags on. Indeed, the parties have entered in into a Settlement Agreement prior to any depositions and it is likely that at least fifteen depositions would need to be conducted in this matter. Additional document discovery, further extensive review of all Plaintiffs' time records, and significant briefing would also still be required, incurring significant cost and expense. Moreover, if the Parties were required to move forward with trial preparation, significant additional costs would be

---

Agreement. Further, there are no "absent" class members as this is an FLSA collective action, which requires Plaintiffs to opt-in to the lawsuit and acknowledge that they are bound by the adjudication of the lawsuit and the determinations of Plaintiff Wilson as class representative.

incurred and it is likely this case would continue for many more months, if not years. For all these reasons, this proposed Settlement Agreement is a reasonable manner by which to minimize additional time, risks, and litigation costs.

### 3. The State of the Lawsuit's Proceedings

As set forth above, the Parties engaged in pre-discovery briefing and additionally engaged in the initial exchange of written discovery prior to entering into a Settlement Agreement.

The Parties used information exchanged to evaluate their respective claims and defenses in negotiating an informed and reasonable settlement of this lawsuit.  Further still, the Parties have been able to enter into this agreement *prior to* additional discovery, including depositions, which would significantly balloon the fees and costs associated with this matter. As such, resolution of the lawsuit at this stage in the proceedings points in favor of a fair and reasonable resolution.

### 4. Probability of Success on the Merits and Range of Possible Recovery

With respect to the probability of success and the range of possible recovery, the Parties acknowledge that their respective positions are complex, are directly in conflict with one another, and inherently uncertain due to factual disputes and legal theories.  Ultimately, continued discovery and motion practice would likely result in significant attorneys' fees and therefore must be considered in resolving the matter, considering the nominal damages available to Plaintiffs.

It is Plaintiff Wilson's position that the acts of "booting up" one's computer to log-on, clock-in, and prepare systems to take calls as a call center agent are compensable work activities. Plaintiff argues that Defendants will be unable to show that the amount of time taken to allegedly "boot up" systems in order to begin taking calls is *de minimus*. Plaintiff also argues that Defendants admitted liability on Plaintiffs' regular rate claims by sending payments for same to the Plaintiffs during the pendency of this litigation.

Defendant argues that it has a policy in place called a Missing Punch form that should have been utilized by Plaintiffs if they ever were delayed in clocking-in prior to engaging in compensable work activities. Defendant also argues that while any amount of time required to clock in is not a compensable work activity at all, it is at best, *de minimus*. During the course of discovery, Defendant believes that Plaintiffs' responses to written discovery have conceded any claim for post-lunch break wages or for breaks of less than 20 minutes. Defendant also argues that Plaintiff's regular rate claim is moot. Thus, the predominant remaining factual and legal issue is Plaintiff Wilson's claim for wages for pre-shift work activities.

The Parties disagree on Plaintiffs' likelihood of success on the merits. However, even assuming Plaintiffs' likelihood of success is high (which Defendant disputes), the nominal amount of potential recovery at issue makes resolution of the case at this stage reasonable and sensible. Indeed, based on her Amended Complaint, Plaintiff herself claims the amount she should be awarded is between five to 20 minutes for pre-shift activities and two to five minutes for post-meal activities. The Settlement Agreement negotiated provides the Plaintiffs with six minutes per day – which is *within* Plaintiff's own alleged range of possible recovery. Accordingly, these factors weigh heavily in favor of approval of the Settlement Agreement.

5.    **The Public Interest**

Courts have held that "there is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources." *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 530 (E.D. Mich. 2003). Courts have also found that the enforcing the FLSA furthers an important interest in "encouraging employees and others to ensure that employers comply with laws governing employment." *Levan v. Sears, Roebuck & Co.*, 984 F. Supp. 2d 855, 871 (E.D. Tenn.

2013).  Here, as in *Deja Vu Servs,* this Settlement Agreement achieves both purposes, because it "puts an end to 'potentially long and protracted litigation'," while also providing employees "wages and legal protections" under the FLSA.  *Id.* 925 F.3d at 899.  Thus, this factor also weighs in favor of approving the Settlement Agreement.

## AWARD OF ATTORNEYS' FEES AND COSTS

Section 216(b) of the FLSA provides that "[t]he court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."  29 U.S.C. § 216(b).  An award of attorneys' fees to a prevailing plaintiff under § 216(b) of the FLSA is mandatory, but the amount of the award is within the discretion of the judge.  *Fegley v. Higgins*, 19 F.3d 1126, 1134 (6th Cir. 1994).

A negotiated fee is preferred because it prevents attorneys' fees from becoming "a second major litigation."  *Hensley v. Eckerhart*, 461 U.S. 424, 437, (1983) ("Ideally, of course, litigants will settle the amount of a fee.").  Courts therefore have "a responsibility to encourage agreement" on fees where possible.  *Blum v. Stenson*, 465 U.S. 886, 902 n.19 (1984); *see also Local 56, United Food & Commercial Workers Union v. Campbell Soup Co.*, 954 F. Supp. 1000, 1005 (D.N.J. 1997) (granting counsel the maximum amount of fees agreed to by the defendant under the settlement agreement where "class members ... retain all that the settlement provides [and] they do not lose any of the negotiated benefits on account of an attorneys' fee and costs award that equals the 'cap' on such an award set forth in the settlement").

Indeed, although not binding here, the Eighth Circuit recently held that court approval of negotiated attorneys' fees and costs is not necessary.  *Barbee v. Big River Steel, LLC*, 2019 U.S. App. LEXIS 18527, *4 (8th Cir. June 20, 2019) ("any authority for judicial approval of FLSA settlements in 29 U.S.C. § 216 does not extend to review of settled attorney fees . . .[w]hen the

7

parties negotiate the reasonable fee amount separately and without regard to the plaintiff's FLSA claim, the amount the employer pays to the employees' counsel has no bearing on whether the employer has adequately paid its employees in a settlement."). Nonetheless, the Court should still approve the fees agreed to by the Parties in the Settlement Agreement.

Plaintiffs' argue that the proposed attorneys' fees and costs are reasonable given the legal theories presented in the case and the amount of resources expended to investigate, research, analyze, and prepare Plaintiffs' claims for litigation. Specifically, Plaintiffs' Counsel spent a significant amount of time investigating the potential claims, drafting pleadings, defeating Defendant's dispositive motion, engaging in written discovery, corresponding with Defendant's counsel, reviewing documents related to Plaintiff's theory in this case, drafting a damage model, negotiating the Settlement Agreement, and filing this motion. These activities are necessarily time consuming.

Plaintiffs submit that the attorneys' fees and costs contained in the settlement agreement are more than reasonable and should be approved as a settlement of the attorneys' fees incurred in this matter. Plaintiffs' counsel has submitted a Declaration in support of the negotiated attorneys' fees and costs. (**Exhibit 2**, Young Declaration). Defendant takes no position on Plaintiffs' request for the attorneys' fees and costs provided in the Settlement Agreement—per the agreement's terms.

## CONCLUSION

For the reasons stated above, the Parties request that the Court enter an Order granting their Joint Motion approving the Settlement Agreement, and dismissing the entire action with prejudice and without further costs or attorney's fees.

Respectfully submitted on June 30, 2022.

| PLAINTIFFS | PECKHAM, INC. |
|---|---|
| /s/ *Jesse L. Young (w/ permission)* | */s/ Scott R. Eldridge* |
| **Jesse L. Young** | **Scott R. Eldridge** |
| Sommers Schwartz, P.C. | **Ashley N. Higginson** |
| One Towne Square, 17th Floor | **Schuyler Ferguson** |
| Southfield, Michigan 48076 | Miller, Canfield, Paddock, and Stone, P.L.C. |
| jyoung@sommerspc.com | 120 N. Washington Square, Suite 900 |
| Tel: 248-355-0300 | Lansing, Michigan |
| *Attorneys for Plaintiffs* | Office:  517-487-2070 |
|  | eldridge@millercanfield.com |
|  | higginson@millercanfield.com |
|  | ferguson@millercanfield.com |
|  | *Attorneys for Defendant* |

9